# IN THE COURT OF APPEALS OF IOWA

No. 22-1684
Filed February 22, 2023

**IN THE INTEREST OF N.B., Z.B., and L.B.,**
**Minor Children,**

**K.B., Father,**
          **Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Brent Pattison, District Associate Judge.

A father appeals the termination of his parental rights.  **AFFIRMED.**

Heidi Miller of Gribble, Boles, Stewart & Witosky Law, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Bryan Webber of Carr Law Firm, P.L.C., Des Moines, guardian ad litem for minor children.

ConGarry Williams of Juvenile Public Defender, Des Moines, attorney for minor children.

Considered by Schumacher, P.J., Ahlers, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**MULLINS, Senior Judge.**

A father appeals the termination of his parental rights to his three children under Iowa Code section 232.116(1)(f) (2022).[1]  He challenges the sufficiency of the evidence supporting the ground for termination and argues termination is contrary to the children's best interests due to the closeness of the parent-child bonds.

## I.  Background Facts and Proceedings

The children, born in 2014, 2017, and 2018, came to the attention of the Iowa Department of Health and Human Services (DHHS) in May 2021.  The parents consented to temporary removal of the children based on "unaddressed substance abuse."  The initial concerns focused on the care and environment provided by the mother and her boyfriend—which involved homelessness, drug use, and domestic violence—but the father also admitted to "methamphetamine use within the last month."  The parents agreed to continued removal at a subsequent hearing due to "a combination of homelessness and substance abuse issues."  The parents later stipulated to adjudication under Iowa Code section 232.2(6)(c)(2) and (n) (2021).

The father underwent a substance-abuse evaluation in late June and began extended outpatient treatment in July.  He provided negative drug screens at the time of both his evaluation and commencement of treatment.  However, the father only attended one treatment session about a week later and then discontinued

[1] The mother's rights were also terminated.  She does not appeal.

attending thereafter. He was unsuccessfully discharged for that reason in September.

By the time of the dispositional hearing in mid-September, the DHHS had received reports from the father's family members that he exhibited behavioral indicators of methamphetamine use and that he was dating a known methamphetamine user, despite the fact that the father's own sobriety "action plan" acknowledged "being around the wrong people" who "have drugs" was a problem situation for him. In its dispositional order, the juvenile court noted concern for the father's discharge from treatment for lack of attendance and his family's suspicions that he was using, which resulted in the children's relative placement being unwilling to supervise visits. Later in September, the father was arrested for operating while intoxicated following a vehicle collision, and the arresting officer reported the father was under the influence of marijuana.

The father completed a second substance-abuse evaluation in early December, which again resulted in a recommendation that he engage in extended outpatient treatment. The father scheduled an initial admission appointment, but he ultimately did not attend that appointment. He then scheduled the appointment to occur on a later date, but he did not attend that appointment either. He was again unsuccessfully discharged. On the bright side, by the time of the review hearing in mid-December, the father was visiting the children nearly every day. But the father had also not engaged in mental-health treatment despite having a history with depression, and his housing and employment situations remained unstable.

A permanency hearing was held in late June 2022. In its ensuing order, the court observed the father "has not engaged in the substance abuse treatment he needs" and "has also not participated in the drug screens as requested by the" DHHS. Specifically, the evidence shows the father declined to participate in several offered drug screens because he did not have valid identification, and the father's brothers also continued to report their observance of behavioral indicators of drug use. The court was also concerned with the father's minimalization of his substance-abuse problem and concluded the father was only flirting with attending treatment because DHHS demanded it. Given the father's ongoing indicators of drug use, the court declined to grant an extension and changed the permanency goal to termination of parental rights. But in doing so, the court specifically advised the father that he "still has some time to show some sobriety." While the father reported he intended to engage in treatment the following month, he did not do so.

The State filed its termination petitions in July, and a hearing on the petitions was held in August. The social worker testified she began requesting the father to submit to drug screens in March 2022 once it became clear he would not meaningfully participate in substance-abuse treatment. But the father never submitted to these drug tests because, according to him, he did not have valid identification. In or about May, the father reported he would be getting his identification, but he later reported it got "lost in the mail." The worker also testified the father's housing and employment circumstances remained unstable and he had no ability to support the children if they were placed in his custody.

The father testified he has been staying with his "on and off" girlfriend in a one-bedroom apartment for "a few days," and he still does not have valid

identification that would allow him to undergo drug testing. He also testified he does not have transportation that would allow him to go anywhere to provide a sample for a drug test. And he agreed he did not attend the substance-abuse evaluation in July or schedule another one. But he submitted he has been "[c]lean and sober for at least six months." He also agreed he has no employment or income.

In its ruling, the court terminated the father's parental rights under Iowa Code section 232.116(1)(f) (2022). In determining the children could not be returned to the father's custody, the court found the father's claim of sobriety was not credible, highlighting his admitted use at the onset of the case, failure to participate in treatment to address his use, ongoing behavioral indicators of use as observed by family members, and evasion of drug testing. The court found termination was in the children's best interests and none of the permissive exceptions to termination were proven.

The father appeals.

## II. Standard of Review

We review termination proceedings de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021); *In re C.Z.*, 956 N.W.2d 113, 119 (Iowa 2021). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

## III. Discussion

The court applies a three-step analysis in conducting its de novo review of terminations of parental rights, asking whether (1) a statutory ground for termination is satisfied, (2) the children's best interests are served by termination, and (3) a statutory exception applies and should be exercised to preclude termination. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

For his challenge to the sufficiency of the evidence supporting termination under section 232.116(1)(f), the father only challenges the final element—that the children could not be returned to his custody at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4) (requiring clear and convincing evidence that children cannot be returned to parental custody "at the present time"); *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). The father highlights his claimed sobriety of six months, alleged stable housing, and ongoing contact with the children.

First, even if we didn't afford the juvenile court the deference it is due as to credibility assessments, we would agree the father's claimed sobriety is not credible. He never meaningfully participated in treatment aimed at alleviating his substance abuse. And he never submitted to requested drug screening. While the father placed the blame for this on the DHHS and his lack of valid identification, he agreed his lack of identification was a circumstance entirely within his control. And most telling is the ongoing reports of behavioral indicators of use by the father's own brothers. Second, the father's housing situation encompassing a few days with an on-again-off-again girlfriend cannot be described as stable. And while

the father submitted they could make room for the children to reside in the living room, this one-bedroom apartment was clearly not a suitable living arrangement for two adults and three children. On the third point, we do commend the father for maintaining contact with the children throughout the proceedings, but that does not equate to a finding that the children could be returned to his custody.

At the end of the day, the evidence was clear and convincing that these children could not be returned to the father's custody. He has unaddressed substance-abuse issues. While his mental health was not a focal point of the proceedings, he has unaddressed issues on that front as well. The father does not have a stable housing environment that the children could be received into, and he has no employment or income and, as a result, no ability to provide for these children. All told, we find the State met its burden to prove the children could not be returned to the father's custody at the time of the termination hearing.

Next, the father argues termination is contrary to the children's best interests, *see* Iowa Code § 232.116(2), due to the detrimental effect resulting from severance of the close parent-child bonds. *See id.* § 232.116(3)(c). Properly considering these arguments step by step, we first address the children's best interests. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2011) (discussing three-step termination framework). In determining whether termination is in the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

For his best-interests claim, the father asserts the State did not make "any showing that the children are suffering due to uncertainty in this case," so termination should be avoided. But, as noted, safety and the need for a permanent home are the defining elements of a child's best interests. *H.S.*, 805 N.W.2d at 748. And "[i]t is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *A.S.*, 906 N.W.2d at 474 (alteration in original) (citation omitted). While we acknowledge concrete permanency options have not been put in place for all three children, "whatever the future holds for these children, it will be better than the 'parentless limbo' they have already been in" since removal. *In re R.E.*, No. 22-1665, 2022 WL 17826929, at *2 (Iowa Ct. App. Dec. 21, 2022) (citation omitted). We agree with the juvenile court that it is time for these children to have a chance at permanency and, as such, termination is in the children's best interests.[2] *See In re Z.P.*, 948 N.W.2d 518, 525 (Iowa 2020).

Turning to the permissive exception cited by the father, Iowa Code section 232.116(3)(c) authorizes the court to forgo termination when it "would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship." The application of a statutory exception to termination, if one exists,

---

[2] While the father submits termination of his parental rights will also terminate the sibling relationship between one of the children and the other two, that is not accurate. True, at the time of the termination hearing, one of the children was placed with a paternal relative along with the children's half-sibling, while the other two children were placed in foster care. While it was unlikely the relative could serve as a permanent placement for the one child, DHHS intended to explore foster placements for that child closer in proximity to the other two children that would allow for fostering of the children's sibling relationships.

is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). And "the parent resisting termination bears the burden to establish an exception." *A.S.*, 906 N.W.2d at 476. While we acknowledge a bond between the father and children, we conclude the father failed to meet his burden to show "that the termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship[s]." That is not to say the children will not face some negative consequences following termination; they clearly will. We simply are unable to conclude the disadvantages posed by termination overcome the father's deficiencies and would cause detriment to the children. *See D.W.*, 791 N.W.2d at 709. We agree with the juvenile court that this exception does not apply.

## IV. Conclusion

We affirm the termination of the father's parental rights.

**AFFIRMED.**